**Sean Anthony PRINCE, Petitioner,**

v.

**Attorney General Michael MUKASEY, et al., Respondents.**

**Civil Action No. 3:08–CV–1876.**

United States District Court,
M.D. Pennsylvania.

Dec. 11, 2008.

Sean Anthony Prince, Lords Valley, PA, pro se.

Dennis Pfannenschmidt, U.S. Attorney's Office, Harrisburg, PA, Timothy Judge, U.S. Attorney's Office, Scranton, PA, for Respondents.

## MEMORANDUM

RICHARD P. CONABOY, District Judge.

Here we consider the Habeas Corpus Petition Pursuant to 28 U.S.C. § 2241 (Doc. 1) filed by Petitioner Sean Anthony Prince on October 10, 2008. Petitioner is a pre-final order of removal detainee in the custody of the Department of Homeland Security ("DHS") at the Pike County Correctional Facility in Pike County, Pennsylvania. (Doc. 1 at 1; Doc. 6 at 2.) With this Petition, Petitioner seeks release from custody based on the length of his incarceration (over fourteen months at the time of filing), claiming the deprivation of liberty caused by his indefinite detention is unconstitutional. (Doc. 4 at 17.)

Respondents filed their response to the Petition (Doc. 6) on November 19, 2008, and Petitioner filed a reply brief (Doc. 7) on November 26, 2008. Therefore this matter is fully briefed and ripe for disposition. For the reasons discussed below, we deny the Petition.

### I. Background [1]

Petitioner is a forty-two year old native of Guyana who entered the United States as a legal permanent resident on May 21, 1983. Petitioner states he was in criminal custody in West Chester County Correctional Facility in Valhalla, New York, before being transferred to the custody of the Department of Homeland Security ("DHS") on July 11, 2007.

On July 11, 2007, the DHS served Petitioner with a Notice to Appear indicating that he was deportable under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA" "Act").[2] This section of the Act provides that "[a]ny alien who is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct ... is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). In support of this charge, the DHS cited two

---

1. There is no major discrepancy between the facts set out in Petitioner's Habeas Corpus Petition (Doc. 1 at 1–4) and Respondent's response to the Petition (Doc. 6 at 2–7). Therefore the background information in this section is derived from both documents with any discrepancy or alternate source specifically noted.

2. The INA is codified at 8 U.S.C. § 1101, *et seq.* Section 237 of the INA is codified at 8 U.S.C. § 1227.

New York State Penal Law convictions: 1) a March 4, 2003, conviction for Assault with Intent to Cause Physical Injury in the Third Degree (section 120.00(1)); and 2) a July 9, 2002, conviction for Menacing in the Second Degree (section 120.14).

Also on July 11, 2007, the DHS issued a Notice of Custody Determination informing Petitioner that he would be detained and his detention was mandated by the INA.[3] The notice further informed Petitioner that an immigration judge ("IJ") could not review the detention status.

Three supplemental charging documents were later filed. On August 31, 2007, the DHS issued a charging document adding a new basis for deportability and amending the bases previously identified: 1) deportability pursuant to Section 237(a)(2)(B)(i) of the INA is supported by Petitioner's conviction for a violation of New York State Penal Law on April 25, 1997,[4] relating to a controlled substance not excepted by the provision (Criminal Possession of Controlled Substance in the Seventh Degree, section 220.03);[5] 2) pursuant to Section 237(a)(2)(A)(ii), the Assault with Intent to Cause Physical Injury in the Third Degree (section 120.00(1)) conviction of March 4, 2003, as identified in the original charging

**3.** The Notice cited to section 236 of the INA. This section is codified at 8 U.S.C. § 1226. Section 1226(c) provides for the detention of criminal aliens as follows:

(c) Detention of criminal aliens
(1) Custody
The Attorney General shall take into custody any alien who—
(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title;
(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
(2) Release
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.
8 U.S.C. § 1226(c).

**4.** The text of Respondent's brief identifies the date of Petitioner's controlled substance conviction as April 25, 2007. (Doc. 6 at 3.) However, the INS charging document attached to the brief (Ex. C) states the conviction occurred on April 25, 1997. (*See* Doc. 6 at 7.)

Petitioner alleges that this conviction is based on false identification. (Doc. 1 at 2–3.) There is no indication that this charge is under review.

**5.** Specifically, applicable the provision states the following:

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

document, was changed to Attempted Assault in the Third Degree (with intent to cause physical injury)(section 110–120.00(1)); and 3) pursuant to Section 237(a)(2)(A)(ii), for the July 9, 2002, conviction for Menacing in the Second Degree the New York Penal Law section was changed from section 120.14 identified in the original charge to section 120.15.

The second supplemental charging document dated September 21, 2007, states that Petitioner's removal is further supported by his conviction on January 6, 2006, on two (2) counts of Terroristic Threats in violation of section 2C:12–3A of the New Jersey Crimes Code.[6]

The third supplemental charging document dated October 16, 2007, adds two (2) additional bases for Petitioner's removal: 1) Petitioner's April 2, 1985, California conviction for Petty Theft (California Penal Code § 488C); and 2) Petitioner's September 17, 1985, California conviction for False Identification to a Peace Officer (California Penal Code § 148.9).

The record also shows that Petitioner filed a motion to terminate proceedings which Immigration Judge Walter Durling denied on September 20, 2007. The basis of the motion was Petitioner's contention

that his March 4, 2003, conviction for Attempted Assault in the Third Degree was not a crime of moral turpitude. The IJ's denial was based on his determination that moral turpitude attaches through malicious intent, not just to the infliction of injury. (*See* Doc. 6–2 at 11.)

The record further reveals that Petitioner filed an application regarding eligibility for cancellation of removal as a permanent resident which was denied by IJ Durling on March 7, 2008. (Doc. 6–2 at 18.) The IJ determined that Petitioner's accrual of the seven-year time necessary for lawful permanent residency was interrupted by his 1985 convictions. (*Id.* at 21.) Although the IJ found that Petitioner's 1985 California conviction for false identification to a police officer is not necessarily a crime of moral turpitude, he concluded that Petitioner's "accrual of lawful permanent residence stopped ·at the time when he committed his first [crime involving moral turpitude], in this case petty theft, and quite possibly providing false identification to a peace officer." (*Id.* (*citing* INA § 240A (d)(1))[7].) The Immigration Judge further noted that Petitioner's April 12, 1997, conviction for drug possession ap-

---

8 U.S.C. § 1227(a)(2)(B)(i).

**6.** Petitioner seems to assert that these charges were based on false allegations. (*See* Doc. 1 at 3.) There is no indication that they are under review.

**7.** INA § 240A is codified at 8 U.S.C. § 1229b. Section 1229b(a) provides that

[t]he Attorney General may cancel removal in the case of an alien who is ... deportable from the United States if the alien (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of an aggravated felony.

8 U.S.C. § 1229b(a). The provision referenced by the IJ, section 240A(d)(1), sets out

"special rules relating to continuous residence or physical presence." 8 U.S.C. § 1229b(d)(1).

For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection(b)(2) of this section, when the alien is served a notice to appear under section 1229(a) of this title or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1).

peared to make him ineligible for the relief sought. (*Id.*)

On October 2, 2008, IJ Durling issued an Interlocutory Ruling in which he allowed Petitioner the opportunity to establish that his 1985 misdemeanor conviction for false identification is not a crime involving moral turpitude in support of his request for discretionary relief pursuant to INA § 240A(a). (Doc. 6–2 at 22.) The IJ directed Petitioner to inform the court how he wishes to proceed in this matter at the next master calendar.[8] (*Id.*)

On October 28, 2008, the Immigration Court issued a Notice of Hearing in Removal Proceedings. (Doc. 6–2 at 23.) The notice informs Petitioner that he is to appear for a hearing in the Immigration Court on January 15, 2009.[9] (*Id.*)

Petitioner filed the instant action on October 10, 2008, pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondents filed their response (Doc. 6) on November 19, 2008, and Petitioner filed his reply (Doc. 7) on November 26, 2008. Thus, this matter is now fully briefed and ripe for disposition.

## II. Discussion

With this Petition, Petitioner does not challenge the Attorney General's power to detain him or the merits of his Notice to Appear. (Doc. 1 at 5.) Rather, Petitioner challenges only his continued detention as a pre-final order of removal detainee on the basis that his detention (fourteen months at the time of filing in October 2008) is "well outside of the normal Bright Time Line described in *Demore v. Kim.*" (Doc. 4 at 1, 4.) In his reply brief Petition-

er also challenges his continuing detention on equal protection grounds. (Doc. 7 at 11.)

Respondents maintain that Petitioner's detention is lawful in that he is subject to the mandatory detention provision of the INA relating to criminal aliens, section 236(c), and he has not established that he is subject to unreasonably prolonged detention. (Doc. 6 at 7.) Respondents' do not counter Petitioner's equal protection argument and would not be expected to do so because it was not raised in Petitioner's habeas petition (Doc. 1).

Regarding his equal protection claim, we conclude Petitioner has not properly presented the claim and he is not entitled to relief on this basis. Having considered the parties' arguments and the relevant statutory and case law regarding the propriety of Petitioner's detention, we conclude that given the circumstances of this case Petitioner is not entitled to habeas relief at this time.

## A. Detention Pursuant to Section 236(c) of the INA

Section 236(c) of the INA, codified at 8 U.S.C. § 1226(c), provides that "[t]he Attorney General shall take into custody any alien who" is deportable from the United States because he has been convicted of a crime or crimes specified in the provision. *See supra* n. 3.

In *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), the United States Supreme Court considered this mandatory detention provision and held by a narrow majority that "Congress, justifiably concerned that deportable crim-

---

8. The record does not indicate when the date of the "next master calendar" or whether Petitioner has informed the IJ of his decision on whether to proceed.

9. The connection between the matters addressed in the preceding paragraph, i.e., the

status of Petitioner's application for discretionary relief under INA § 240A(a) and the "master calendar" to which the IJ refers, and the January 15, 2009, hearing is not clear from the record.

inal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent may be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513, 123 S.Ct. 1708. The petitioner was a citizen of South Korea who entered the country at age six and became a lawful permanent resident two years later. *Id.* Ten years later, in 1996, he was convicted of first-degree burglary and a year after that he was convicted of "petty theft with priors." *Id.* In light of these convictions, the Immigration and Naturalization Service ("INS") deemed Petitioner deportable and he was detained for a period of six months before his release following the district court's determination that section 1226(c)'s requirement of mandatory detention was unconstitutional. *Id.* at 513–14, 123 S.Ct. 1708.

After the Supreme Court decided *Demore v. Kim*, at least two circuit courts have concluded that the holding is limited to cases where the pre-final order detainee is not held for a prolonged duration. *Tijani v. Willis*, 430 F.3d 1241, 1252 (9th Cir. 2005); *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir.2003).

In *Ly v. Hansen* the Sixth Circuit Court of Appeals held that section 1226(c) should be interpreted to mean that "the INS may detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings." *Ly*, 351 F.3d at 268. Discussing *Demore v. Kim*, the *Ly* Court noted the Supreme Court "specifically indicated [8 U.S.C. § 1226(c)] detentions were usually relatively brief, ... but it did not specifically hold that any particular length of time in a specific case would be unreasonable or unconstitutional." *Ly*,

351 F.3d at 270. *Ly* distinguished *Demore v. Kim* on two main bases. First, in *Demore* the petitioner, a native of South Korea, was an alien for whom deportation to South Korea was a real possibility, *id.*, and this was not the case for the petitioner in *Ly* whose native country was Vietnam, a country with whom the United States did not have a repatriation treaty, *id.* at 266 n. 1. Second, in *Demore* the Court's discussion was "undergirded by reasoning relying on the fact that Kim, and persons like him, will normally have their proceedings completed within a short period of time and will actually be deported, or will be released," a situation which was not the case in *Ly*. *Id.* at 271. In *Ly*, the petitioner had been detained for eighteen months before he was ordered released by the district court, a decision affirmed by the appellate court as discussed above.

To avoid deciding the constitutional issue raised by lengthy pre-final order of removal incarceration, in *Tijani v. Willis* the Ninth Circuit Court of Appeals held that "we interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens." 430 F.3d at 1242. *Tijani* then applied this holding to the facts of the case, noting that "two years and eight months of process is not expeditious; and the foreseeable process in this court is a year or more." *Id.* *Tijani* distinguished the situation presented from that in *Demore v. Kim* on the basis that there the alien conceded deportability and Petitioner Tijani did not. 430 F.3d at 1242

No precedential Third Circuit Court of Appeals case has examined or discussed *Demore* in a context similar to that presented here. In *Tineo v. Ashcroft*, 350 F.3d 382 (3d Cir.2003), the Third Circuit Court noted that the question of whether mandatory detention of an alien pending removal without any right to an individual-

ized hearing violates due process "raises substantial issues." *Id.* at 398–99. However, the *Tineo* Court did not address the issues because the petitioner had not done so with any degree of specificity. *Id. Tineo* noted many of the issues were addressed in *Demore v. Kim* and the case "casts substantial doubt on the viability of a due process challenge to the statute under which [the petitioner] was detained." *Id.* at 399 n. 12.

In *Jah v. Attorney General,* 258 Fed. Appx. 394 (3d Cir.2007) (not precedential), a case where the pre-final order detainee was in custody for five months when the district court denied his habeas petition, the Third Circuit panel upheld the district court's denial on the basis that *Demore v. Kim* authorized custody of a pre-final order detainee. *Id.* at 395.

In *Tavares v. Attorney General,* 211 Fed.Appx. 127 (3d Cir.2007) (not precedential), the Third Circuit panel considered whether a petitioner's pre-final order of removal detention pursuant to 8 U.S.C. § 1226(c) violated his civil rights where he had been released after eighteen months detention. *Tavares* noted that "although [the petitioner's] detention was somewhat lengthy, it was prolonged because ... the proceedings involved two rounds of IJ decisions and appeals." *Id.* at 128 (internal quotation omitted). Thus, although considered in a civil rights rather than habeas context, it is clear that the panel considered eighteen months to be "somewhat lengthy" detention and also took into account the reasons for the prolonged custody.

Several recent cases in the Middle District have considered the issues raised by the mandatory detention component of 8 U.S.C. § 1226(c). In *Madrane v. Hogan,* 520 F.Supp.2d 654 (M.D.Pa.2007), Chief Judge Kane conducted a very thorough review of the statutory framework, *Demore v. Kim,* and subsequent cases dealing with the issue of mandatory detention. This review led to the conclusion that the *Demore* holding is "grounded in the repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course." [10] Chief Judge Kane rejected the respondents'

> inflexible position that Petitioner may be detained for as many years as it may take to obtain a final order regarding his removal simply on the basis of the mandatory language of § 236(c), particularly where the Supreme Court in *Demore* did not expressly contemplate the constitutionality of such protracted detention, and where Defendants have offered no other compelling justification or authority for such indefinite detention of this particular alien.

*Id.* at 667. After considering the evidence presented by both parties at a hearing held on the petitioner's habeas action, Chief Judge Kane concluded the petitioner's "extended detention in ICE custody for more than three years while ICE has pursued its efforts to remove Petitioner has resulted, at this point, in a violation of Petitioner's right to due process and is therefore unconstitutional." *Id.*

---

**10.** *Madrane* cites the numerous references in *Demore* to the anticipated limited duration of the detention period as well as the statistical references relied upon by the Supreme Court. 520 F.Supp.2d at 664. *Demore's* statistical underpinnings include the following: in 85% of cases in which aliens were detained pursuant to § 1226(c), removal proceedings were completed in an average time of 47 days, and a median of 30 days; and in the remaining 15% of cases in which an alien appeals an Immigration Judge's ruling to the Board of Immigration Appeals, an appeal takes an average of four months, with a shorter median time. *Demore,* 538 U.S. at 529, 123 S.Ct. 1708.

*Wilks v. DHS,* Civil No. 1:07–CV–2171, 2008 WL 4820654 (M.D.Pa. Nov. 3, 2008) (Caldwell, J.), interpreted *Demore v. Kim* to mean that "[m]andatory detention under 8 U.S.C. § 1226(c) is constitutional as long as the detention does not exceed the period typically required for removal proceedings." 2008 WL 4820654, at *2. Because the petitioner had been detained for approximately two and one-half years while his immigration proceedings made their way through the agency and court of appeals, Judge Caldwell concluded that he had been subject to "prolonged detention" and was entitled to a hearing before an immigration judge where the government would have the burden of proving the petitioner to be a flight risk or danger to the community. *Id.* at *3.

In *Matthias v. Hogan,* Civ. Action No. 4:07–CV–1987, 2008 WL 913522 (M.D.Pa. Mar. 31, 2008) (McClure, J.), the court denied habeas relief after considering the *Madrane* analysis. *Id.* at *7. The court found the petitioner's mandatory detention under section 236 had not been "more than a 'brief period' or a 'short time,'" where he had been held for a period of seven months and had an individual hearing scheduled. *Id.* at *8.

> "[B]ased on the specific facts of our case, since Petitioner, a pre-final order detainee, has not been held in ICE custody for one year or more and since Petitioner has an individual hearing scheduled for March 8, 2008, we do not find that due process requires this Court to release Petitioner on bond, as he requests in his Habeas Corpus Petition, or on release on his own recognizance, as the Court ordered in *Madrane.*"

*Id.* at *8. The court also noted that the petitioner's individual hearing would allow him the opportunity to request release from custody and that the petitioner had not made any argument that the scheduled hearing would fail to afford him due process. *Id.* at *8.

Though not exhaustive, we conclude our review of Middle District cases addressing issues similar to ours with *Abdul v. United States Department of Homeland Security,* Civil Action No. 1:07–CV–571 (M.D.Pa. Nov. 9, 2007) (Kane, C.J.), a case Respondents cite in support of their argument that Petitioner's detention is constitutional. (Doc. 6 at 12; Doc. 6–3 at 1–4.) In *Abdul,* a case where the petitioner had been detained for less than a year, Chief Judge Kane agreed with the respondent that the petitioner's pre-final order of removal detention was mandatory pursuant to § 236(c) of the INA. *Abdul,* Civil Action No. 1:07–CV–571, at 4. Regarding this decision, she noted the following: "In light of the majority decision in *Demore,* and the limited amount of time for which Petitioner has been detained, the Court agrees with the Government that Petitioner is not entitled to relief." *Abdul,* Civil Action No. 1:07–CV–571, at 4 n.3. Chief Judge Kane compares this result with *Madrane* in that the petitioner there was detained for over three years. *Id.*

As a general matter, the case law review set out above reveals that many courts either have determined or are moving in the direction of finding that detention of pre-final order of removal detainees for a lengthy period may raise constitutional concerns. Further, many courts have concluded that the decision of the United States Supreme Court in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), should not be read broadly, i.e., it should not be read to support an unreasonably lengthy detention of pre-final order detainees. The conclusion that the Court's decision in *Demore* is, at least in part, based on the expected limited duration of pre-final order of removal detainees is well-supported by the numerous refer-

ences to this issue throughout the opinion. *See supra* n. 10. The conclusion that the holding should not be read broadly is also supported by the Court's own language: "We hold that Congress ... may require that persons *such as respondent* may be detained for the *brief period* necessary for their removal proceedings." *Demore,* 538 U.S. at 513, 123 S.Ct. 1708 (emphasis added).

Considering detention in a broader context, we note that holding or detaining someone, including an alleged alien, for long periods of time without a hearing or while the government "puts its case together" goes against all of the constitutional concepts, long part of the fabric of the law of this country and the legal concepts of democracy. Thus, we see a growing trend by the courts of this nation in all cases where detention is involved to require the governmental authorities to show cause why detention is necessary, bearing in mind that there are, at times, circumstances such as potential danger to a community, potential terroristic conduct, and potential of flight which exist. But, as a general principle, these concerns cannot be presumptions and must be made known and demonstrated within a reasonable time, and those detained given an opportunity to respond to such charges in an appropriate manner.[11]

Turning now to the facts of our case, it appears that under the specific circumstances presented here Petitioner's removal proceedings to date have not taken an "unreasonably long time," *Ly,* 351 F.3d at 268, nor has he been subject to what can be considered in this case the type of "prolonged detention," *Wilks,* 2008 WL 4820654, at *3, which warrants habeas relief. Several considerations support the reasonableness of Petitioner's detention.

Although Petitioner has been detained for over sixteen months, after filing the original charging document on July 11, 2007, DHS filed three supplemental charging documents, the last of which was filed on October 16, 2007. *See supra* p. 730. Because the charging documents represent a total of six convictions in three states dating from 1985 through 2006, *see supra* pp. 728–30, there is no indication that the subsequent filings caused an unreasonable delay.

The record also shows that Petitioner filed a motion to terminate proceedings and an application regarding eligibility for cancellation of removal as a permanent resident during his detention. *See supra* p. 730. Both filings were denied, but the IJ issued a ruling on October 2, 2008, indicating Petitioner may be able to present additional evidence in support of the latter during the next "master calendar." *See supra* p. 731. As the Third Circuit panel in *Tavares* noted that "although [the petitioner's] detention was somewhat lengthy, it was prolonged because ... the proceedings involved two rounds of IJ decisions and appeals," 211 Fed.Appx. at 128, our approach to determining "reasonableness" rightly includes consideration of agency proceedings to date. While this Court would not, in any way, even infer that petitioners should not file appropriate documents challenging their detention or the reasons for detention, petitioners such as Prince must know that their own conduct has to be included in determining whether

---

**11.** While the principles considered in the text need no citation given the plethora of judicial opinions and commentary concerning the matters discussed, we specifically note that both the Bail Act of 1984 and subsequent amendments, *see* 18 U.S.C. § 3141 et seq.,

and Rule 46 of the Federal Rules of Criminal Procedure set forth many items to be considered when determining whether to release or detain someone accused of violating the law and the guidance provided is instructive in the detainee context.

**736**

or not a "reasonable time" was exercised by the authorities in determining the proper response to any assertions made either by Petitioner or the Government.

Finally, Petitioner is scheduled to have an individualized hearing on January 15, 2009. *See supra* p. 731. Just as the court found in *Matthias*, 2008 WL 913522, at *8, we find there is no basis to conclude this hearing will fail to afford Petitioner due process.

Although it is not clear from the record precisely what will be considered at this hearing, given the circumstances of this case and the length of Petitioner's detention, we also conclude that Petitioner's continued detention should be specifically addressed at the January 15, 2009, hearing in that his detention approaches a duration which becomes problematic. Thus, as supported by the cases reviewed above, at Petitioner's January 15, 2009, hearing, the immigration judge should require government authorities to move in an expeditious manner, and the immigration judge should further require that the government provide specific reasons why the continuation of Petitioner's somewhat lengthy detention is justified. In this regard, we thoroughly understand that the government may be concerned about the release of any petitioner being a potential for danger to the community into which he will be released, the possibility that he might flee, or the possibility that the chances for terroristic activity might be enhanced by his release. Nonetheless, these items should be made known to the petitioner and to the authorities so that a proper and expeditious determination can be made concerning his release.

### B. Equal Protection Claim

As noted above, Petitioner also challenges his continuing detention on equal protection grounds. This claim is made only in his reply brief. (Doc. 7 at 11.) Even if we were to assume *arguendo* that this claim were properly raised, the claim would fail.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." The Fifth Amendment, which applies to the federal government, does not contain an equal protection clause but the principles announced in the Fourteenth Amendment clause apply equally to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

With this claim, Petitioner cites four situations where the alien's release allegedly violated immigration rules and regulations. (Doc. 7 at 11–12.) Although Petitioner does not expand his argument, we assume he would argue that the immigration authorities application of the mandatory detention provision of the INA runs afoul of the Equal Protection Clause because they treat similarly situated detainees differently.

While we acknowledge that showing another detainee to be similarly situated would be difficult given the complexity of the immigration and removal framework, Petitioner here has not come close to doing so. To the contrary, in three of the four situations presented, the alien had been in custody for "almost three years" or more. (Doc. 7 at 11–12.) Petitioner's detention does not approach this duration. Therefore, we conclude that, even if properly

presented, Petitioner would not be entitled to relief on his equal protection claim.

### III. Conclusion

For the reasons discussed above, we deny Petitioner's habeas action (Doc. 1). However, we do so with direction to Respondents that, consistent with the discussion of this issue in the body of this Memorandum, the length of Petitioner's detention warrants specific consideration at the hearing scheduled for January 15, 2009. An appropriate Order follows.

### ORDER

AND NOW, THIS 11th DAY OF DECEMBER 2008, FOR THE REASONS DISCUSSED IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1. Petitioner's Habeas Corpus Petition Pursuant to 28 U.S.C. § 2241 (Doc. 1) is DENIED;

2. At Petitioner's January 15, 2009, hearing, the immigration judge should require government authorities to move in an expeditious manner, and the immigration judge should further require that the government provide specific reasons why the continuation of Petitioner's somewhat lengthy detention is justified, including identifying with specificity support for any allegations concerning danger to the community, risk of flight or terroristic concerns;

3. The Clerk of Court is directed to close this case.