In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2448

MOHAMMAD AZAM HUSSAIN,

*Petitioner-Appellant,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States, *et al.*,

*Respondents-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 C 268—**William C. Griesbach**, *Judge.*

ARGUED NOVEMBER 29, 2007—DECIDED DECEMBER 18, 2007

Before CUDAHY, POSNER, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The petitioner, Hussain, sought temporary freedom by petitioning for federal habeas corpus, claiming that his detention pending removal proceedings deprived him of liberty without due process of law. (He named as a respondent, along with his immediate custodian, the Attorney General; whether the Attorney General is a proper respondent when the petitioner is detained pursuant to removal proceedings is an open question, *Rumsfeld v. Padilla*, 542 U.S. 426, 436 n. 8

(2004), unnecessary to address in this case.) The district court turned him down, and he has appealed.

The case has a tangled background. Hussain came to this country from Pakistan, his native country, in 1994, and five years later became a lawful permanent resident. In September 2004 he was arrested and charged with immigration fraud, based on false documents that had enabled him to enter and remain in the United States; other misrepresentations were charged as well. He was convicted in June 2005 and sentenced to nine months in prison, time served. The following month he was placed in detention in an immigration facility and removal proceedings were begun. He has remained in immigration custody for the past two and (almost) a half years.

His removal hearing was spread over several days between December 2005 and May 2006, when the immigration judge took the matter under advisement. He meanwhile had appealed his criminal conviction to us, for although he had served his sentence, a reversal of the conviction would help him resist removal. In October 2006, while the appeal was pending, the government agreed to the vacation of the judgment and the dismissal of the indictment in lieu of turning over classified information to the defense. Later that month Hussain asked the immigration judge to order him released on bond pending the conclusion of the removal proceeding, and in February the immigration judge granted his request. But the government appealed to the Board of Immigration Appeals, which stayed the immigration judge's order; so Hussain remained in custody.

On May 1, 2007, while that appeal was pending before the Board, the immigration judge concluded the removal proceeding with an order that Hussain be removed. The

judge ruled that Hussain had gained entry to the United States by fraud and was barred from asylum (for which he had applied during the removal proceeding) by having been a member of a terrorist organization, the Mohajir Qaumi Movement-Haqiqi. Mohajirs are Muslim refugees from India who have settled in Pakistan. See Yaroslav Trofimov, "Pakistan's Embattled Leader Embraces Maverick Partner," *Wall St. J.*, Dec. 5, 2007, p. A1. The "embattled leader" is of course President Musharraf—himself a Mohajir—and the "maverick partner" is MQM—the Mohajir Qaumi Movement, though probably not the branch to which Hussain belonged.

But while finding that Hussain was removable, the judge also found that he was entitled to relief under the Convention Against Torture because if returned to Pakistan he would be likely to be tortured. Thus the removal order was contingent.

Two months before that order was issued Hussain had applied for habeas corpus. His application was denied just weeks after the order of removal was entered, and it is that denial that is challenged in this appeal. But that is not the end of our narrative. Hussain appealed the removal order to the Board of Immigration Appeals; the government cross-appealed from the part of the order that granted Hussain relief under the Convention Against Torture. While those appeals were pending, the Board reversed the immigration judge's order to release Hussain (the order the Board had earlier stayed), on the ground that the finding that Hussain was a member of a terrorist organization precluded his release. 8 U.S.C. § 1226(c)(1); see *id.*, § 1227(a)(4).

In October, the Board affirmed the immigration judge's order in its entirety and remanded the case for the entry

of a final order of removal after completion of the background investigation required as a condition of release when a removable alien is allowed to remain in this country by reason of the Convention Against Torture or the refusal of any country to accept him. 8 C.F.R. § 1003.47. The immigration judge entered the final order on November 6, ordering Hussain removed but staying removal until and unless he could be removed without his removal's precipitating a violation of the Convention Against Torture. Hussain has filed a petition in this court to review the order, which is administratively final. He has also filed a petition to review the Board's earlier decision affirming the immigration judge's contingent removal order, but that decision was not a final order.

We have stayed Hussain's removal pending our decision on the merits of the removal order. Entry of a stay may seem redundant, given that removal is barred until compliance with the Convention Against Torture is achieved. But it is not. The protection that the Convention provides is fragile. The government wants to try to obtain diplomatic assurances from the government of Pakistan that Hussain will not be tortured if he is returned there, and if that attempt fails the government intends to explore the possibility that India, or some other country in which Hussain would not be in danger of being tortured, will accept him. If either of these endeavors should succeed, Hussain might, were it not for our stay, be removed from this country before we could decide his petition for review, though this is unlikely; the government is reluctant to initiate discussions with foreign governments before our decision lest we decide that Hussain is not removable and by doing so moot any negotiations with foreign governments over removing him.

Hussain argues that the refusal of the Board of Immigration Appeals to allow him to be released during the administrative removal proceeding had no statutory basis and indeed was unconstitutional because of the length of time that he has been in detention (even apart from the time he was detained because of the since-abandoned criminal proceeding). The argument became moot with the issuance on November 6 of the immigration judge's final order directing that Hussain be removed contingent on its being done in a way that complies with the Convention Against Torture. We can stay the contingent removal order pending completion of our judicial review, and we have done so, but there is nothing we can do about the Board's failure to have ordered Hussain released during the administrative proceeding, for that is now complete.

Nor can we (putting aside for the moment Hussain's constitutional claim) order his release pending our decision on the validity of the contingent removal order. All other objections pressed by the government to one side, the statute that governs judicial review of removal orders bars review of discretionary determinations by the Board, 8 U.S.C. § 1252(a)(2)(B)(ii), and we held in *Bolante v. Keisler*, No. 07-2550, 2007 WL 3170144 (7th Cir. Oct. 31, 2007), that this section of the immigration code bars us from ordering the release of an alien pending judicial review of the order of removal.

What is true but does not avail Hussain is that indefinite detention of aliens who are ordered removed is forbidden. Ordinarily an alien ordered removed must be removed within 90 days after the order of removal has become administratively final, or, if as in this case a stay pending judicial review has been granted, within 90

days after the court has upheld the order. 8 U.S.C. § 1231(a)(1)(B). But section 1231(a)(6) says that the government "may" detain him beyond that period. To avoid a due process issue, the Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678 (2001), that section 1231(a)(6) should be interpreted to create a presumption that if six months after the beginning of the removal period the alien has not been removed, he is entitled to be released if "there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Hussain's removal period will not begin until and unless we affirm the removal order.

*Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003), holds that the principle of *Zadvydas* does not require release *pending* judicial review of the removal order, that is, before that review is complete, which is where Hussain is. The difference between the two cases, as pointed out in *Kim*, is that an alien who is ordered removed could languish in detention for the rest of his life if no country could be persuaded to accept him, whereas judicial review of removal orders takes only a limited amount of time and if there is hardship to the petitioner the court can agree to expedite the proceeding. In fact, we have ordered expedited briefing and argument in the judicial review proceeding.

All that is left for Hussain to argue is that since he already has been detained in immigration custody—improperly he argues—for more than two years (indeed for more than three years if his detention on criminal charges is included), due process bars his detention for another minute, and we should therefore reverse the district court and order him released until we decide whether to uphold the order of removal. In effect

he seeks compensation in kind for what he claims was the unlawful denial of release during the administrative proceeding. This "comp time" approach, in which a moot habeas corpus proceeding becomes the vehicle for obtaining release pending judicial review of an administrative order, won't wash. We could not just order Hussain released; a motion for release hasn't even been filed in the judicial review proceeding. We would have to remand this case—the habeas corpus case—to the district court to fix appropriate terms of release. By the time that was done, the proceeding in this court to review the removal order—the proceeding that we are expediting—would be over. For before we could even remand this case to the district court to fix the terms of release we would have to determine whether Hussain had been entitled to release during the administrative proceedings—the issue to which the parties have devoted 167 pages of contentious briefing—and therefore had a claim, on his view of the law, to compensation in the form of an immediate release.

This is not to say that an alien never has a right to release from immigration custody before he is subjected to a final order of removal. Inordinate delay before the order was entered might well justify relief, *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003), with habeas corpus the appropriate vehicle for obtaining it, as we know from *Zadvydas* and *Kim*. It would be a considerable paradox to confer a constitutional or quasi-constitutional right to release on an alien ordered removed (*Zadvydas*) but not on one who might have a good defense to removal. In this case removal proceedings began in July 2005 and did not wrap up at the administrative level until the immigration judge's final order of removal in November of this year—more than two years later. But Hussain did not file

his application for habeas corpus until March of this year, with the completion of the administrative removal proceeding within sight. By that time, the only appropriate relief would have been to condition his continued detention on a prompt resolution of the removal proceeding—and that relief was not sought. By delay in seeking habeas corpus he allowed his case for release pending the completion of the proceeding to become moot.

Oddly, neither party has explained *why* the administrative proceeding took so long. But even if the delay was unconscionable, was not procured in whole or part by Hussain himself, and was of such a length as to infringe his rights because he was denied release throughout the protracted proceeding, it would not do to order his release now, when the removal proceedings are in their final stage. Should we affirm the contingent order of removal, the protection provided by *Zadvydas* against indefinite detention will click in. But that is for the future. For the present, the issue is habeas corpus relief, and for the reasons that we have explained the judgment of the district court denying that relief must be

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*