### Alexander ALLI and Elliot Grenade, Petitioners

v.

### Thomas DECKER, et al., Respondents.

### No. 4:09–CV–0698.

United States District Court, M.D. Pennsylvania.

Aug. 10, 2009.

Farrin R. Anello, Judy Rabinovitz, Michael Tan, American Civil Liberties Union Foundation, New York, NY, Stanley J. Ellenberg, Law Offices of Stanley J. Ellenberg, PC, Philadelphia, PA, Frederick Alcaro, Kathleen A. Mullen, Thomas B. Schmidt, III, Pepper Hamilton LLP, Valerie Burch, ACLU of Pennsylvania, Harrisburg, PA, Witold J. Walczak, American Civil Liberties Union of PA, Pittsburgh, PA, for Petitioners.

Dennis Pfannenschmidt, Stephen Cerutti, U.S. Attorney's Office, Harrisburg, PA, Geoffrey Forney, Gjon Juncaj, Theodore W. Atkinson, UD–DOJ, Civil Division, Office of Immigration Litigation, Washington, DC, for Respondents.

## MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.

This matter is before the Court in what the respondents correctly note is a rather unique procedural posture. Before the Court are the Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory Relief (Doc. 9) of petitioners Alexander Alli and Elliot Grenade as well as the petitioners' Motion for a Preliminary Injunction (Doc. 27) and Motion for Class Certification (Doc. 17). By this Memorandum and Order, the Court does not finally resolve the petitioners' claims, but sets forth its initial legal holdings and establishes a framework for additional proceedings.

## I. BACKGROUND

The petitioners are lawful permanent residents charged by the Bureau of Immigration and Customs Enforcement with being deportable from the United States as a result of certain criminal convictions. In their combination habeas petition and civil complaint, the petitioners challenge their detention during the pendency of removal proceedings pursuant to the mandatory detention provisions of Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). As of the date of the filing of their amended petition, Alli and Grenade had been detained for approximately 9 months and 20 months respectively.[1] The petitioners seek a declaration that the failure to provide them with a hearing at which the government must justify their continued detention violates the INA and the Due Process Clause of the Fifth Amendment. The petitioners also seek an order directing the government to conduct such hearings and have moved for a preliminary injunction directing the government to conduct their hearings within 14 days.

In addition to their individual claims, the petitioners propose to represent a class of all lawful permanent residents in Pennsylvania, or alternatively in this judicial district, who are or will be subject to detention for 6 months or more under § 1226(c) without an individualized hearing at which the government must justify detention. As classwide relief, the petitioners seek a

---

1. The parties dispute how much of Grenade's detention is actually pursuant to § 1226(c). For the reasons explained below, however, the Court need not resolve this dispute now.

declaration that the failure to provide all class members who are or will be detained under § 1226(c) for 6 months or more with individualized detention hearings violates the INA and due process.

## II. DISCUSSION[2]

### A. Petitioners' Individual Claims

The detention of an alien pending a decision on whether he is to be removed from the United States is governed by § 236 of the INA, codified at 8 U.S.C. § 1226. Under § 1226(a), the Attorney General (now the Secretary of Homeland Security)[3] is granted discretion to detain the alien or release the alien on bond and with conditions. Under § 1226(c), however, the Attorney General "*shall* take into custody any alien who . . . is deportable by reason of having committed" certain aggravated offenses. 8 U.S.C. § 1226(c)(1)(B) (emphasis added). Because of their prior offenses falling within the scope of the that section, the petitioners in this case have been mandatorily detained pursuant to § 1226(c).

In considering the petitioners' challenge to their detention, we must start from the Supreme Court's holding in *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), that mandatory detention during removal proceedings under § 1226(c), without an individualized bond hearing, does not violate due process. In that case, the Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers,

may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Id.* at 513, 123 S.Ct. 1708; *see also id.* at 526, 123 S.Ct. 1708 (noting the "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"). The Court found that the petitioner's six-month detention under § 1226(c) did not violate due process.

In doing so, the Court distinguished its prior decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), wherein the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. Under § 1231(a)(6), when an alien who has been ordered removed is not in fact removed during the 90–day statutory "removal period," that alien "may be detained beyond the removal period" in the discretion of the Attorney General. In order to avoid "serious constitutional concerns" raised by the indefinite detention possible under the statute, the *Zadvydas* court construed § 1231 to authorize continued detention of an alien following the 90–day removal period for only such time as is reasonably necessary to secure the alien's removal. 533 U.S. at 699, 121 S.Ct. 2491. Based on the views of Congress, and for the sake of uniform administration in federal courts, the *Zadvydas* court held that an alien's detention for more than six months after the issuance of a final order of removal is presumptively unreasonable,

---

2. No party disputes the jurisdiction of the Court to consider this action. *See Demore v. Kim*, 538 U.S. 510, 516–17, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *DeSousa v. Reno*, 190 F.3d 175, 182–183 (3d Cir.1999); *Sandoval v. Reno*, 166 F.3d 225, 238 (3d Cir.1999).

3. The Homeland Security Act of 2002 transferred most immigration-related functions of the Attorney General to the Secretary of the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135. For the sake of convenience, throughout this opinion we use the term Attorney General as contained in the statute.

and that after this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing and demonstrate that detention remains reasonable. *Id.* at 701, 121 S.Ct. 2491.

In *Demore,* the court distinguished *Zadvydas* on two grounds. First, in *Zadvydas,* the aliens challenging their detention were ones for whom removal was no longer practically attainable, and, therefore, continued detention did not serve the purpose of § 1231, which is prevent aliens from fleeing prior to their removal. By contrast, the Court found that detention pursuant to § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 527–28, 123 S.Ct. 1708. Second, while the period of detention at issue in *Zadvydas* was "indefinite" and "potentially permanent," 533 U.S. at 690–691, 121 S.Ct. 2491, the Court found that the detention at issue in *Demore* was of a much shorter duration. 538 U.S. at 528, 123 S.Ct. 1708. The *Demore* court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days," and that "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Id.* at 529, 123 S.Ct. 1708; *see also id.* at 530, 123 S.Ct. 1708 (stating "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal").

In this case, the respondents stress the holding of *Demore,* that mandatory detention under § 1226(c) is constitutional, and that, in contrast to the indefinite and potentially permanent detention at issue in *Zadvydas,* detention under § 1226(c) has a definite end point at the conclusion of the removal proceedings. The petitioners concede that brief detention under § 1226(c) is constitutional, but maintain that "prolonged" detention, which they argue presumptively begins at six months, raises serious constitutional concerns. The petitioners argue that to avoid constitutional problems, § 1226(c) must be interpreted to permit mandatory detention only for a brief period of time—six months—and that detention after this is permitted only after a bond hearing is held under § 1226(a).

In this case, the Court concurs with the growing consensus within this district and, indeed it appears throughout the federal courts, that prolonged detention of aliens under § 1226(c) raises serious constitutional concerns. *See, e.g., Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005); *Ly v. Hansen,* 351 F.3d 263, 267–68 (6th Cir.2003); *Prince v. Mukasey,* 593 F.Supp.2d 727, 734 (M.D.Pa.2008). Although mandatory detention under § 1226(c) serves the statutory purpose of guaranteeing an alien's presence at removal proceedings, prolonged detention contravenes the intent of Congress that such proceedings proceed expeditiously. *Ly,* 351 F.3d at 269; *see also Patel v. Zemski,* 275 F.3d 299, 304 (3d Cir.2001), *overruled on other grounds by Demore,* 538 U.S. at 516, 123 S.Ct. 1708 (noting "[t]he current immigration laws reflect part of a growing effort by Congress to expedite the removal of criminal aliens"). Moreover, although detention under § 1226(c) is not indefinite in that there will, at some point, be an end to removal proceedings, the holding of *Demore* that mandatory detention is constitutional can-

not be divorced from the Supreme Court's observation that such detention is of a relatively short duration. 538 U.S. at 528–29, 123 S.Ct. 1708. The *Demore* court repeatedly qualified its holding by noting that mandatory detention is constitutionally permissible for the "brief," *id.* at 513, 523, 123 S.Ct. 1708, "limited," *id.* at 526, 529 n. 12, 531, 123 S.Ct. 1708 and "temporary," *id.* at 531, 123 S.Ct. 1708, period necessary for removal proceedings. When it moves beyond the brief and limited period reasonably necessary to accomplish removal proceedings, mandatory detention is inconsistent with both the due process required by the Constitution and the statutory purposes of the INA. The Court also agrees with the numerous opinions which have concluded that, under the canon of constitutional avoidance, § 1226(c) should be read to avoid such constitutional concerns. *See, e.g., Tijani,* 430 F.3d at 1242; *Ly,* 351 F.3d at 270; *cf. Zadvydas,* 533 U.S. at 689, 121 S.Ct. 2491. The question becomes how to interpret § 1226(c) to meet constitutional requirements, and courts have taken divergent approaches.

In *Casas–Castrillon v. Department of Homeland Sec.,* 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit adopted the approach urged by the petitioners here. The court in that case addressed the different circumstances of an alien who was subject to § 1226(c), but who had already been ordered removed and whose detention continued while he judicially challenged his removal order. The Ninth Circuit held that because neither § 1226(c) nor § 1231 authorizes prolonged detention pending judicial review of a removal order, the alien's continued detention could only be authorized under § 1226(a), *id.* at 948, and that § 1226(a) must be construed as requiring the Attorney General to exercise his discretion to conduct a bond hearing, *id.* at 951. *See also Tijani,* 430 F.3d at 1242 (remanding case to the district court "with

directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community"). The *Casas–Castrillon* court held that the petitioner's seven-year detention in that case necessitated a bond hearing, but did not define the parameters of what constitutes "prolonged" detention. *Id.* at 950–51. In this case, the petitioners urge the Court to adopt a rule that detention of six months or more under § 1226(c) is impermissibly "prolonged" and entitles an alien so detained to a bond hearing.

In *Ly v. Hansen,* 351 F.3d 263 (6th Cir.2003), the Sixth Circuit took a different approach. In order to avoid the serious constitutional concerns that would arise from prolonged mandatory detention, the court held that § 1226(c) must be construed "to include an implicit requirement that removal proceedings be concluded within a reasonable time." *Id.* at 270. The court expressly declined to require bond hearings for every alien detained under § 1226(c), noting that "[i]n the majority of cases where an order of removal is promptly entered and removal is effected within the time allotted under *Zadvydas,* bond hearings are not required." *Id.* The court also declined to establish a "bright line" test for the reasonable time limitation of pre-removal detention, finding that "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant." *Id.* at 271. Instead, the Sixth Circuit instructed courts to "examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.* Addressing the "question of institutional competence," the court acknowledged that "[b]y not requir-

ing individualized bond hearings, federal courts undertake to supervise the reasonability of detention only via the habeas process." *Id.* at 272. The Sixth Circuit offered three justifications for this approach. First, the court noted that this was the approach taken by the Supreme Court in *Zadvydas. Id.; see Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491 ("Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question."). Second, "those aliens not granted bond hearings would still file habeas petitions," and therefore "federal courts will still be asked to review detention." *Ly,* 351 F.3d at 272. Finally, although a reasonableness standard is not as easily administrable as the bright-line rule adopted in *Zadvydas,* "courts are familiar with and regularly assess reasonableness as a legal standard." *Id.* at 272–73.

Courts within this district have adopted variations of both these approaches. *Compare Prince,* 593 F.Supp.2d at 736 (directing that petitioner's continued detention be addressed at an already-scheduled hearing before an immigration judge); *Wilks v. U.S. Dep't of Homeland Security,* C.A. No. 1:07–CV–2171, 2008 WL 4820654, at *3 (M.D.Pa. Nov. 3, 2008) (ordering respondents to provide petitioner a bond hearing before an immigration judge) *with Occelin v. Dist. Dir. for Immigration Custom Enforcement,* C.A. No. 1:09–CV–164, 2009 WL 1743742, at *4 (M.D.Pa. June 17, 2009) (ordering a hearing before the habeas court at which the government must justi-

fy the petitioner's continued detention); *Madrane v. Hogan,* 520 F.Supp.2d 654, 661–63 (M.D.Pa.2007) (same).[4]

■ Upon consideration of this precedent, the Court adopts a variation of the approach adopted by the Sixth Circuit in *Ly.* The Court construes § 1226(c) as authorizing mandatory detention for the period of time reasonably necessary to promptly initiate and conclude removal proceedings. If an alien detained pursuant to § 1226(c) makes a showing via a habeas petition that detention is no longer reasonable, the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community.

■ The Court adopts a reasonableness standard administered by federal courts because this approach avoids constitutional concerns while working the least amount of damage to the statutory scheme Congress created. "Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature." *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). The canon of constitutional avoidance is "a means of giving effect to congressional intent, not of subverting it." *Clark v. Martinez,* 543 U.S. 371, 382, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). The intent of Congress in adopting § 1226(c) was to severely limit, if not eliminate, the discretion of the Attorney General to release deportable criminal aliens pending removal proceedings. As

---

**4.** Yet other courts in the district have ordered petitioners immediately released without an administrative hearing or a hearing before the habeas court. *See, e.g., Victor v. Mukasey,* C.A. No. 3:08–CV–1914, 2008 WL 5061810, at

*5 (M.D.Pa. Nov. 25, 2008); *Nunez–Pimentel v. U.S. Dep't of Homeland Security,* C.A. No. 1:07–CV–1915, 2008 WL 2593806, at *5 (M.D.Pa. June 27, 2008).

the *Demore* court noted, Congress had before it evidence that, when the Attorney General had broad discretion to conduct individualized bond hearings and to release criminal aliens from custody during their removal proceedings when those aliens were determined not to present an excessive flight risk or threat to society, other considerations such as limitations on funding and detention space, affected release determinations. 538 U.S. at 519, 123 S.Ct. 1708. In addition, in light of evidence that as many as one out of five criminal aliens released on bond absconded prior to the completion of his removal proceedings, Congress was concerned that, "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." *Id.* at 520, 123 S.Ct. 1708.

The construction of § 1226(c) adopted by the Court implements Congress's intention of assuring attendance at removal proceedings by permitting mandatory detention, to the extent constitutionally permissible, and connecting the duration of detention to the time reasonably necessary to complete such proceedings. That a habeas court determines whether continued detention is justified also addresses Congress's concern that release decisions be based on traditional bail considerations such as risk of flight and danger to the community. The approach urged by the petitioners and adopted by the *Casas–Castrillon* court, on the other hand, funnels deportable criminal aliens to § 1226(a), a portion of the statute which Congress never intended to apply to such aliens, and requires the Attorney General to exercise the very discretion over release of criminal aliens which Congress intended to restrict.

Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources. If the remedy for unreasonable detention were an order directing a bond hearing under § 1226(a), an alien who has already demonstrated that his detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. § 236.1(d)(1), a hearing before an immigration judge, *id.*, the IJ's decision, and a potential appeal to the BIA, *id.* § 236.1(d)(3). In addition, because discretionary bond decisions are not subject to direct judicial review, *see* 8 U.S.C. § 1226(e), the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action. *Cf. Ly,* 351 F.3d at 272. A bond hearing before the habeas court avoids this circuitous and potentially lengthy process. The habeas court's determining whether a petitioner is entitled to release also serves the " 'historic purpose of the writ,' namely, 'to relieve detention by executive authorities without judicial trial.' " *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491 (quoting *Brown v. Allen,* 344 U.S. 443, 533, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring)).

The Court opts for a case-specific reasonableness standard rather than the six-month bright-line rule urged by petitioners for several reasons. First, there is no expression of Congress's doubts as to the constitutionality of detention of deportable criminal aliens for more than six months, even of the type found in *Zadvydas* regarding aliens subject to a removal order. *See Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491 (citing Juris. Statement in *United States v. Witkovich,* O.T.1956, No. 295, pp. 8–9). Second, as the Sixth Circuit in *Ly* recognized, the varying circumstances of individual removal proceedings make a bright-line rule inappropriate. *Ly,* 351 F.3d at 271. Third, a reasonableness standard allows for consideration of relevant factors beyond the length of detention, such as the alien's conduct during removal

proceedings and the likelihood that proceedings will result in an order of removal. A bright-line rule, and likely even a rule based solely on whether detention is "prolonged," run the risk of ignoring these considerations.

As support for the six-month rule that they urge, the petitioners cite to the average times for completing removal proceedings relied on in *Demore*. These averages were undoubtedly important to the holding in that case, but the *Demore* court also seemed to indicate that the average times are not an inflexible outer limit to the constitutionality of mandatory detention without a hearing by finding that the petitioner's six-month detention, which was one month longer than average, was constitutional. *See Demore*, 538 U.S. at 530–31, 123 S.Ct. 1708. The petitioners also rely on 8 U.S.C. § 1226a, which directs the Attorney General to detain aliens removable because of terrorist activities, but which provides that an alien "who has not been removed under section 1231(a)(1)(A) of this title, and whose removal is unlikely in the reasonably foreseeable future, may be detained for additional periods of up to six months only if the release of the alien will threaten the national security of the United States or the safety of the community or any person." 8 U.S.C. § 1226a(a)(6). This statute, however, addresses the concerns raised in *Zadvydas* regarding aliens already subject to removal, and for the reasons set forth in *Demore* and those discussed above, is largely inapplicable here.

■ To aid the parties in further proceedings this case, the Court will note some of the factors to be considered in determining the reasonableness of detention under § 1226(c). What follows, however, is by no means a conclusive or comprehensive list of all potential considerations. The Court adopts the Sixth Circuit's instruction to "examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Ly*, 351 F.3d at 271.

A significant consideration is whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in *Demore*. Although, as noted above, these averages do not mark a per se limit on constitutionally permissible detention under § 1226(c), they were important in defining the "brief" and "limited" period during which mandatory detention is constitutional. When detention moves beyond the time usually necessary to complete removal proceedings, it becomes less likely that detention without a hearing is necessary to achieve the statutory purpose of assuring the alien's attendance and expeditiously concluding removal proceedings. *See Demore*, 538 U.S. at 532–33, 123 S.Ct. 1708 (Kennedy, J. concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

A related consideration is the probable extent of future removal proceedings. This factor cuts both ways. Where the end of removal proceedings is relatively near, continued detention is more likely to be reasonable. *See, e.g., Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir.2007) (affirming denial of a petition seeking release during removal proceedings where the alien filed his petition "with the completion of the administrative removal proceeding within sight," and a decision on whether the alien was entitled to release would not come before judicial review of his removal order was completed). On the

other hand, where it can be foreseen that proceedings will continue for a prolonged period of time, continued detention may be less likely to be reasonable. *See, e.g., Tijani,* 430 F.3d at 1242 (noting, in granting petitioner relief, that the "the foreseeable process" of his appeal of removal "is a year or more"). That the foreseeable period of continued detention will be long is particularly relevant when it follows an already prolonged period of detention. *See, e.g., Madrane,* 520 F.Supp.2d. at 667 (noting "the forecast of additional future appeals or proceedings that could result in Petitioner being detained for many months in addition to the nearly three years he has already been held in custody"); *cf. Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491 (stating "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink").

The respondents argue that future detention is too speculative to consider. We disagree. They are correct that some level of proof is necessary to consider prospective detention, but this is part of the habeas petitioner's burden. *See Parke v. Raley,* 506 U.S. 20, 34, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citing *Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (noting "the preponderance of the evidence standard applicable to constitutional claims raised on federal habeas"). Moreover, the mere fact that removal proceedings will continue, even beyond the time periods identified in *Demore,* does not necessarily mean that detention is unreasonable. *See, e.g., Matthias v. Hogan,* C.A. No. 4:07–CV–1987, 2008 WL 913522, at \*6 (M.D.Pa. Mar. 31, 2008) (finding that petitioner's 7–month detention did not warrant a hearing even though removal proceedings were ongoing); *Abdul v. U.S. Dep't of Homeland Security,* C.A. No. 1:07–CV–571 (M.D.Pa. Nov. 9, 2007) (finding that petitioner's 10–month

detention as of the date of habeas decision did not warrant hearing even though removal proceedings were ongoing). As noted, prolonged future detention will be most relevant when it follows an already prolonged period of detention.

Another factor in reasonableness determination is the likelihood that removal proceedings will actually result in removal. *See Ly,* 351 F.3d at 271. The detention of the petitioner in *Demore* was justified, in part, because he conceded that he was deportable. *See Demore,* 538 U.S. at 513, 522 & n. 6, 531, 123 S.Ct. 1708. Conversely, courts have found detention under § 1226(c) unreasonable where an alien mounts a successful challenge to removal. *See, e.g., Madrane,* 520 F.Supp.2d at 658, 660 (noting that, in habeas petition challenging alien's removal order, government represented that the petitioner was eligible to apply for relief from removal and that IJ had granted the alien a waiver of inadmissibility and adjustment of status to lawful permanent resident); *cf. Ly,* 351 F.3d at 271–72 (finding detention unreasonable where petitioner was ordered removed to a country that does not have a repatriation treaty with the United States).

Finally, another relevant consideration is the conduct of both the alien and the government during removal proceedings. In *Demore,* the court noted that the petitioner's detention had been extended by his own request for a continuance, 538 U.S. at 530–31, 123 S.Ct. 1708, and, citing Congress's concern with frivolous appeals that delay deportation, found no constitutional prohibition against requiring aliens to make the difficult choice of whether to appeal their removal at the potential cost of longer detention, *id.* at 530 n. 14, 123 S.Ct. 1708. Similarly, the Sixth Circuit in *Ly* cautioned that in considering the reasonableness of detention, "courts must be sensitive to the possibility that dilatory

tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." *Ly*, 351 F.3d at 272; *see also Tavares v. Attorney General*, 211 Fed. Appx. 127, 128 (3d Cir.2007) (affirming dismissal of *Bivens* action pursuant to 28 U.S.C. § 1915(e) where alien's 18–month detention was prolonged because "the proceedings involved two rounds of IJ decisions and appeals"); *Prince*, 593 F.Supp.2d at 735–36 (noting "petitioners . . . must know that their own conduct has to be included in determining whether or not a 'reasonable time' was exercised by the authorities").

On the other hand, aliens "should not be effectively punished for pursuing applicable legal remedies." *Oyedeji v. Ashcroft*, 332 F.Supp.2d 747, 753 (M.D.Pa.2004). "[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly*, 351 F.3d at 272. While a court may examine an alien's reasons for seeking relief, the government's delays in resolving such appeals should not be counted against the alien. *See id.* (noting "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take"); *Oyedeji*, 332 F.Supp.2d at 753 ("Prolonged incarceration for an alien whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration because the alien's native country refuses to issue travel documents."). Moreover, the government's own dilatory conduct is significant in determining whether removal proceedings are moving toward conclusion reasonably expeditiously. *See, e.g., Tijani*, 430 F.3d at 1242 (noting that the government had sought multiple extensions of time in briefing petitioner's appeal); *Ly*, 351 F.3d at 272 ("The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision.").

Having determined that the petitioners have stated viable claims and having sketched a framework for further proceedings, we are left to apply that framework to this case. To that end, the Court directs the parties to indicate by letter on the docket, within 20 days of the date order, whether they wish to present testimony or evidence regarding the reasonableness of the petitioners' detention. Following an evidentiary hearing, or in lieu of one if the parties indicate that none is necessary, the Court will accept additional submissions on this issue and then determine whether the petitioners are entitled to a bond hearing. Because the relief the petitioners seek in their petition and motion for preliminary injunction is identical, and because the evidence and argument directed at both submissions will be identical, the Court will consolidate the hearing, if any, and further briefing on the preliminary injunction motion with the merits of the habeas petition. *See* Fed.R.Civ.P. 65(a)(2). By this order, the preliminary injunction motion will therefore be denied as moot.

**B. Petitioners' Class Claims**

■ As noted above, the petitioners propose to represent a class of all lawful permanent residents in Pennsylvania, or alternatively in this judicial district, who

are or will be subject to detention for 6 months or more under § 1226(c) without an individualized hearing at which the government must justify detention, and seek a classwide declaration that the failure to provide such a hearing violates the INA and due process. The respondents argue that 8 U.S.C. § 1252(f)(1) deprives the Court of jurisdiction to adjudicate a class action. For the reasons set forth below, the Court agrees that it lacks subject matter jurisdiction over the petitioners' class claims.

 "The role of the courts in interpreting a statute is to give effect to Congress's intent. Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." *United States v. Diallo,* 575 F.3d 252, 256 (3d Cir.2009) (quoting *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir.2001)). Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1) (emphasis added). The statute's use of the disjunctive—enjoin *or* restrain—indicates that it is meant to bar jurisdiction over class claims for more than just injunctive relief. *See Chalmers v. Shalala,* 23 F.3d 752, 755 (3d Cir.1994) ("We see no basis to construe the disjunctive "or" in any way other than its plain meaning...."). The Court must endeavor

to give meaning to the term "restrain" and avoid an interpretation of § 1252(f)(1) which renders that term superfluous. *Rosenberg,* 274 F.3d at 141–42.

The question thus becomes whether declaratory relief falls within the scope of the meaning of "restrain." The ordinary meaning of "restrain" includes "to prevent from doing, exhibiting, or expressing something ... to limit, restrict, or keep under control .... to moderate or limit the force, effect, development, or full exercise of," Merriam–Webster Online Dictionary; "[t]o check, hold back, or prevent (a person or thing) from some course of action," Oxford English Dictionary; and "[t]o hold back or keep in check; control," The American Heritage Dictionary of the English Language, 4th Ed. *See United States v. Geiser,* 527 F.3d 288, 294 (3d Cir.2008) ("We refer to standard reference works such as legal and general dictionaries in order to ascertain the ordinary meaning of words.").

The Court finds that a classwide declaration that the failure to provide all class members who are or will be detained under § 1226(c) for 6 months or more with individualized detention hearings violates the INA and due process would "restrain" the operation of § 1226(c) within the plain meaning of that term. The practical effect of the class-based declaration that the petitioners seek would be indistinguishable from the effect of a class-based injunction. As the petitioners themselves argue (*see* Doc. 44 at 22–23), although a declaration is a "milder form of relief" than an injunction, *Steffel v. Thompson,* 415 U.S. 452, 471, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (quoting *Perez v. Ledesma,* 401 U.S. 82, 125–126, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan J. in part and dissenting in part)), declaratory relief still has a strong persuasive effect. *See id.* at 469, 94 S.Ct. 1209 (noting "a favorable declaratory

judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear"); *Rivera Puig v. Garcia Rosario*, 785 F.Supp. 278, 293 (D.P.R.1992) (noting that a declaration "carries the moral force of an injunction"). While a declaration may not coercively enjoin the operation of § 1226(c), it would certainly restrain (limit, restrict, hold back, etc.) the government's implementation of the statute as written. This is especially so because the declaration which the petitioners seek does not merely declare the class members' right to a bond hearing, but declares that the government has committed a constitutional violation by failing to provide such a hearing. (*See* Doc. 9 at 36.)

Moreover, the Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted," 28 U.S.C. § 2202, and such "necessary or proper relief" includes an injunction, *Steffel*, 415 U.S. at 461 n. 11, 94 S.Ct. 1209. Especially given the res judicata and collateral estoppel effects of a declaratory judgment, a classwide declaration in this case would merely be a prelude to later injunctions. *See id.*; 10 Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 23:62 (3d ed. 2008); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir.1990) (noting that an action maintainable under both Fed.R.Civ.P. 23(b)(2) and (b)(3) should be treated under (b)(2) "to enjoy its superior res judicata effect"). The classwide declaration that petitioners seek would have little practical difference from a classwide injunction, and, even if it does not create precisely the same effect as an injunction, such a declaration would certainly "restrain" the operation of § 1226(c). The petitioners may not use the procedural device of a declaratory judgment action to avoid the plain meaning of § 1252(f)(1).

This holding is strongly supported by the Supreme Court's opinion in *California v. Grace Brethren Church*, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). In that case, the Court addressed the question of whether federal district courts were prohibited by the Tax Injunction Act from issuing declaratory judgments holding that state tax laws unconstitutional. The Tax Injunction Act employs language nearly identical to § 1252(f)(1), providing that district courts "shall not enjoin, suspend or restrain the ... collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Id.* at 407–08, 102 S.Ct. 2498. The Supreme Court held that this language barred declaratory relief:

> Initially, we observe that the Act divests the district court not only of jurisdiction to issue an injunction enjoining state officials, but also of jurisdiction to take actions that "suspend or restrain" the assessment and collection of state taxes. Because the declaratory judgment procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended, the very language of the Act suggests that a federal court is prohibited from issuing declaratory relief in state tax cases. Additionally, because there is little practical difference between injunctive and declaratory relief, we would be hard pressed to conclude that Congress intended to prohibit taxpayers from seeking one form of anticipatory relief against state tax officials in federal court, while permitting them to seek another, thereby defeating the principal purpose of the Tax Injunction Act: to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.

*Id.* at 408, 102 S.Ct. 2498 (citations omitted); *see also Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688

(1971) (holding that *Younger* abstention bars declaratory as well as injunctive relief regarding pending state criminal proceedings because the declaration may be enforced through an injunction and because "the declaratory relief alone has virtually the same practical impact as a formal injunction would"). Likewise, courts have construed the similarly worded Johnson Act, 18 U.S.C. § 1342, which provides that in certain circumstances district courts shall not "enjoin, suspend or restrain the operation of, or compliance with" state utility rate decisions, to prohibit declaratory relief. *See, e.g., Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1054 (9th Cir.1991), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992); *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1139 (10th Cir.1974).

The petitioners posit that § 1252(f)(1) bars courts, other than the Supreme Court, from enjoining an unconstitutional statute, but does not bar courts from granting relief from misinterpreted and unlawful government "policies and procedures." (*See* Doc. 44 at 29.) Relying on *Ali v. Ashcroft*, 346 F.3d 873, 886–87 (9th Cir.2003), *overruled on other grounds, Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005), and similar cases, the petitioners argue that they do not seek enjoin or restrain "the operation" of the INA but rather "violations" of the statute. (*Id.* at 30–31.) The Court does not find this argument persuasive. To the extent the petitioners attempt to distinguish between the INA and the "policies and procedures" implementing the INA, the Court finds that both the statute itself and the processes putting the statute into action are encompassed within the meaning of "the operation" of the INA. Moreover, the petitioners do not challenge a "violation" of the statute. They do not appear to contest that their detention is facially authorized by § 1226(c) and, at least initially, consti-

tutionally permissible. The petitioners do not seek an order that the government must follow its own policies. Instead, the petitioners seek a declaration that an additional constraint must be added to § 1226(c) and the government's implementation of that statute in order to avoid constitutional concerns. *Cf. United States v. X–Citement Video, Inc.*, 982 F.2d 1285, 1295 n. 6 (9th Cir.) (Kozinski, J., dissenting), *rev'd* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ("Constitutional narrowing seeks to add a constraint to the statute that its drafters plainly had not meant to put there; it is akin to partial invalidation of the statute."). The limitation on § 1226(c) that the petitioners seek to declare is required on a classwide basis undoubtedly "restrain[s] the operation" of that statute.

■ The petitioners also cite to the heading of § 1252(f), "Limit on injunctive relief", as evidence that the section prohibits only class-based injunctions. While "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute," *Almendarez–Torres v. United States*, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (citation omitted), "[t]he title of a statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase" *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (citation and internal punctuation omitted). As discussed above, there is no doubt that the plain meaning of the jurisdictional prohibition in § 1252(f)(1) encompasses more than just injunctive relief, and, therefore, the heading of the section cannot be used to limit the plain meaning of the text.

■ The petitioners also point to the express inclusion of declaratory relief in

§ 1252(e)(1) as an indication that Congress could have expressly included such relief in § 1252(f)(1) had it so intended. It is true that "when the plain meaning cannot be derived, the provision at issue must be viewed in the context of the statute as a whole." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155 (3d Cir.2009). Section 1252(f)(1) plainly encompasses more than just injunctive relief, however, and the ordinary meaning of the word "restrain" is easily broad enough to include declaratory relief, especially the type of declaratory relief sought by the petitioners, which has the same practical impact as an injunction. That Congress employed different language in another portion of the statute does not change this plain meaning.

In sum, because the classwide declaration sought by the petitioners could so readily be turned into an injunction, and because the practical effect of such declaratory relief would be essentially the same as injunctive relief, the Court holds that it lacks subject matter jurisdiction over the petitioners' class action declaratory claims under § 1252(f)(1). Therefore, the portion of the petitioners' petition seeking class relief will be dismissed, and their motion for class certification will be denied.

### III. CONCLUSION

To reiterate, the Court harbors grave concerns about the prolonged detention of aliens under § 1226(c). While our holding is appropriately deferential to Congress's intent, the constitutionally problematic statute has forced the respondents to repeatedly interpose arguments that torture both law and logic in opposing habeas petitions of the type *sub judice*. We have fashioned a resolution that is admittedly imperfect, but which represents the best we can do given the statutory and jurisprudential minefield facing us.

For the foregoing reasons, the petitioners' habeas petition will be granted in part to the extent that the Court construes § 1226(c) as authorizing mandatory detention for the period of time reasonably necessary to promptly initiate and conclude removal proceedings. Within 20 days of the date of this order, the parties shall indicate whether they wish to present testimony or evidence regarding the reasonableness of the petitioners' detention. Thereafter, the Court will determine whether the petitioners shall be afforded a bond hearing.

Consideration of the petitioners' motion for a preliminary injunction will be consolidated with the merits of their petition, and the motion will be denied as moot.

Finally, the portions of the petitioners' habeas petition seeking class relief will be dismissed for lack of subject matter jurisdiction, and the petitioners' motion for class certification will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Petitioners' Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory Relief (Doc 9) is GRANTED in part to the extent that the Court construes 8 U.S.C. § 1226(c) as indicated above;

2. Within 20 days of the date of this Order, the parties shall indicate by letter on the docket whether they wish to present testimony or evidence regarding the reasonableness of the petitioners' detention

3. Petitioners' Motion for a Preliminary Injunction (Doc. 27) is consolidated with the merits of their Amended Petition for Writ of Habeas Corpus and therefore DENIED as moot;

4. The portions of the Petitioners' Amended Petition for Writ of Habe-

550

as Corpus and Complaint for Declaratory Relief (Doc 9) seeking class relief are DISMISSED for lack of subject matter jurisdiction; and

5. Petitioners' Motion for Class Certification (Doc. 17) is DENIED.